IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


COREY D. JONES,

                    Plaintiff,

          v.                         CASE NO.  07-3223-SAC

M. BERHANE, et al.,

                    Defendants.

## MEMORANDUM AND ORDER

     This complaint under Federal Torts Claim Act, 28 U.S.C.
§2671, et seq. (FTCA), was filed by an inmate currently confined at
the United States Penitentiary, Terre Haute, Indiana.  Plaintiff
alleges he sustained a serious injury while he was an inmate at the
United States Penitentiary, Leavenworth, Kansas (USPL), and
complains of various actions and inactions of defendants in
allegedly causing and inadequately treating his injury.  Plaintiff
seeks many millions of dollars in compensatory and punitive damages
from defendants in their individual and official capacities.


## FILING FEE

     Plaintiff has not paid the filing fee of $350.00 required
for this civil action.  Nor has he submitted a motion under 28
U.S.C. § 1915(a) for leave to proceed without prepayment of fees
(ifp motion).  The clerk will be directed to send plaintiff proper
forms for filing an in forma pauperis motion.  Plaintiff will be

given thirty (30) days to either pay the filing fee in full or submit an ifp motion that meets the statutory requirements[1] before this action may proceed.  If plaintiff fails to submit the fee or a proper ifp motion including the required supporting documents within the time allotted by the court, this action may be dismissed without further notice.

**FACTUAL ALLEGATIONS**

As the factual background for his complaint, Mr. Jones alleges he seriously injured his right ankle when he "stepped into a fissure" while playing basketball at the USPL on May 25, 2005. He further alleges he was examined shortly after the injury by defendant P.A. Berhane, who made angry comments, was in a rush to leave on that Friday evening, and threatened to lock him up for malingering if he returned.  According to exhibits attached to plaintiff's complaint, Berhane also ordered x-rays of his injury, initially mis-diagnosed it as a bad sprain, and provided a cane and a pain reliever.  Within a day or two, plaintiff was examined by P.A. Camps who took x-rays, which revealed his leg was broken. Camps consulted by telephone with defendant Dr. McCollum who directed Camps to place apply a cast.  Plaintiff alleges Camps thought plaintiff "needed hardware," but Dr. McCollum informed

---

[1]    28 U.S.C. § 1915 requires that a prisoner seeking to bring a civil action without prepayment of fees submit an affidavit described in subsection (a)(1), and a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined."  28 U.S.C. 1915(a)(2).

Camps "that plaintiff didn't need any hardware because LVN did not have the funds." According to plaintiff's statements in his exhibited grievances, he was also examined by P.A. Miller, who removed the cast and took more x-rays. The few pages of a medical log among plaintiff's exhibits indicate he was provided a cast, a splint, pain medication, x-rays delayed by loss and technical problems, and continued use of crutches while awaiting diagnosis and surgery. On or about June 1, 2005, plaintiff again returned to "Medical Services" in pain and was seen by defendant Dr. Tharp, who diagnosed him with a "Closed FX/Dislocated R ankle, and possible related injury R knee." Dr. Tharp and the "Clinical Director" determined plaintiff needed to go to the emergency room, and sent him to Providence Medical Center Emergency Department (PMC) where, according to plaintiff's attached exhibit of his grievance dated November 27, 2006, he was given a shot of morphine, x-rayed again, examined by a physician, and returned to USPL. Plaintiff alleges in his complaint that PMC "refused to treat (him) because, according to a Dr. Elo, the contract between (PMC) and the FBOP had expired." However, plaintiff's exhibits indicate he saw Dr. Elo at the PMC emergency room and was referred to Dr. MaGuire. P.A. Campbell logged Jones' return from the hospital on June 1, 2005, and noted his appointment with a physician the next day. The exhibited log next contains defendant Dr. McCollum's notation on June 2, 2005, that Mr. Jones will be scheduled with Dr. Maguire for an operation "as soon as possible." Plaintiff alleges that on or about June 6, 2005, defendant Dr. MacMillan diagnosed him as

"suffering Weber B right lateral malleolus fracture necessitating right ankle reconstruction," and performed the procedure at Overland Park Regional Medical Center (OPMC) on or about June 9, 2005.

Mr. Jones additionally alleges it "was Dr. MacMillan's professional judgment" that plaintiff was "in serious need" of post-operative therapy, but MacMillan "was deterred from providing such therapy." He also alleges that Dr. MacMillan instructed him to stay in bed after surgery, but those instructions were ignored; and he experienced severe pain for weeks when he was forced to climb ten flights of stairs and travel over several hundred feet to the prison's Chow Hall "because no one would bring (him) anything to eat." He states that "by 20 June 2005" his Unit Manager requested in writing that his meals be served in his cell, but that request was ignored by the USPL medical and food service staff. He also alleges he requested a lower cell assignment, but the request was "largely ignored until on or about May-June 2005." The exhibits attached to the complaint indicate Mr. Jones was placed on "convalescent status," as early as June 2, 2005, to expire as late as August 30, 2005, was provided first a wheel chair with crutches and later crutches only, and was ordered "lower bunk housing" and "early chow permit" by defendants McCollum and Tharp.

Mr. Jones further alleges he re-injured his ankle on about June 24, 2005, when he was forced to walk to get his own ice[2]. He

_____

[2]   One of plaintiff's exhibits shows he was examined the day of the fall, and no change was found.

4

also claims he and his sister were harassed and his sister was threatened by defendant Gallegos when she repeatedly called the prison urging that plaintiff be provided proper treatment. Plaintiff was transferred to a different facility within a month of his injury.   Plaintiff asserts all named defendants were deliberately indifferent, and that the medical providers were negligent and committed medical malpractice.

## SCREENING

Because Mr. Jones is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.   28 U.S.C. § 1915A(a) and (b).   Having screened all materials filed, the court finds portions of the complaint are subject to being dismissed for the following reasons.

## OFFICIAL CAPACITY CLAIMS

In 2006, Mr. Jones filed an action based upon the same injury and naming most of the same defendants.   He was informed in the prior action that he could not sue federal employees, agents, or agencies in their official capacities under Bivens, and that such a suit is, in effect, one against the United States. Kentucky v. Graham, 473 U.S. 159, 166 (1985)(A suit against government employees in their official capacities is suit against government

entity.); Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002); Farmer v. Perrill, 275 F.3d 958, 963 (10th Cir. 2001)("There is no such animal as a Bivens suit against a public official tortfeasor in his or her official capacity."). In his prior suit, plaintiff did not name the United States as a defendant.

Plaintiff was also informed in his prior action that the United States is immune to suit for money damages except where there is a specific statutory provision waiving sovereign immunity, like the FTCA[3]. Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989)(The federal courts lack subject matter jurisdiction to consider a claim for damages against the United States and its agencies absent an express statutory waiver of its sovereign immunity); Kentucky v. Graham, 473 U.S. at 165-67; Dahn v. United States, 127 F.3d 1249, 1254 (10th Cir. 1997)(The United States and its agencies have not waived sovereign immunity for Bivens-type claims.); United States v. Mitchell, 463 U.S. 206, 212-14 (1983). Plaintiff was additionally advised to exhaust the administrative remedy required by the FTCA. He has since exhausted that remedy and now properly names the United States as a defendant in this FTCA action.

However, plaintiff again improperly includes many individuals as defendants and claims to sue them in their official

---

[3]     The FTCA essentially operates as a waiver of sovereign immunity when federal employees are negligent in the scope of their employment.

capacities.[4]  To the extent plaintiff seeks monetary relief against defendants in their official capacities as employees or agents of the FBOP, those claims are construed as claims against the defendant United States only.  This action must be dismissed as against all other defendants in their official capacities.

## INDIVIDUAL CAPACITY CLAIMS

Plaintiff's claims against defendants in their individual capacities do not support a cause of action under the FTCA. Plaintiff claims all defendants violated his right to be free of cruel and unusual punishment.  He alleges many distinct actions and inactions in support of his Eighth Amendment claim, which may be summarized as follows: (1) the initial mis-diagnosis of his injury by a physician's assistant and a physician at the USPL; the denial of immediate, emergency medical treatment which was necessary for his serious injury; and deliberate indifference of prison officials to his post-operative medical needs in that they denied necessary therapy and ignored prescribed restrictions.

The court declines to construe plaintiff's assertions of Eighth Amendment violations as Bivens claims[5] for the following

---

[4]    Plaintiff names the following employees of the USPL as defendants: Physician's Assistants (PAs) M. Berhane, Mr. Camps, Mr. Miller, and Mr. Swan; physicians Dr. J. Tharp and Dr. William McCollum; the Health Services Administrator (HSA) Mr. Drenen; and Warden Gallegos.  He also names a private physician in Kansas, Dr. Jeffrey MacMillan; and the OPMC.  He alleges the last two defendants acted under contract with the Federal Bureau of Prisons (FBOP) to provide medical care to federal prisoners.  Plaintiff sues all defendants in their individual and official capacities.

[5]    Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), recognized a private right of action in favor of victims of constitutional violations committed by federal agents.  Such victims

reasons.  First, plaintiff does not assert jurisdiction under
<u>Bivens</u>, but expressly asserts jurisdiction only under the FTCA.
Moreover, even though plaintiff purports to sue all defendants in
their individual capacities, his allegations do not suggest that he
sues any named defendant based upon actions taken outside the scope
of his or her federal employment or authority.  Instead, plaintiff
alleges that all defendants, including Dr. Macmillan and the OPMC,
were either employees or contract agents of the FBOP responsible
for providing medical care to prisoners.  It thus appears
plaintiff's cause of action is based upon defendants' actions or
inactions taken within the scope of their federal employment.  Such
claims are properly brought under the FTCA[6] rather than <u>Bivens</u>.
Plaintiff's simple allegation that a federal agent's acts were
wrongful is not sufficient to demonstrate that he or she acted
outside the scope of his or her official authority.

The court also declines to construe plaintiff's claims
against individual defendants as brought under <u>Bivens</u> because, as

---

may recover money damages from the agents in their individual capacities.  <u>Id.</u>
at 396-97; <u>Perrill</u>, 275 F.3d at 960 FN4.  A <u>Bivens</u> claim may not be brought
directly against the United States or its agency.  <u>FDIC v. Meyer</u>, 510 U.S. 471,
484-85 (1994); <u>Dahn</u>, 127 F.3d at 1254.  Furthermore, allegations of federal
constitutional violations are required to state a claim under <u>Bivens</u>.

[6]     42 U.S.C. § 233(a) makes the FTCA the sole remedy for injuries
allegedly received at the hands of Public Health Service officers acting within
the scope of their employment.  Thus a federal inmate could not maintain an
action under <u>Bivens</u> against prison doctors or certified physicians' assistants
for acts or omissions while performing their official tasks if they were deemed
to be employees of the Public Health Service.  Section 233(g)(1)(A) broadly
defines those persons or entities who "shall be deemed to be an employee of the
Public Health Service."  <u>See</u> <u>Allen v. Christenberry</u>, 327 F.3d 1290, 1296 (11th
Cir. 2003), <u>cert denied</u>, 540 U.S. 877 (2003).  The court does not have sufficient
facts before it at this time to determine whether or not Section 233(a) would
apply to bar recovery under <u>Bivens</u> in this case.

he was informed in his prior action, he fails to state sufficient facts to support a claim of cruel and unusual punishment. Mr. Jones' allegation that every defendant was deliberately indifferent to his injury is conclusory[7]. His complaints appear to involve a delay of a few days before correct diagnosis and a few days before surgery was scheduled and performed, as well as a mere difference of opinion between him and the prison staff, rather than a knowing denial of necessary medical treatment[8]. In fact, plaintiff's own exhibits indicate he received, rather than was denied, medical treatment for his injury.

_____

[7]     The Eighth Amendment creates an obligation on the part of prison officials to provide adequate health care to inmates. Estelle v. Gamble, 429 U.S. 97, 103 (1976). This does not mean, however, that a mere complaint that a physician has been negligent in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment. Id. at 106. Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. This standard is met when (1) there is a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000); and (2) a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). When defendants Berhane, Camps, Miller, McCollum, Tharp, and MacMillan became aware of plaintiff's ankle injury, each of them responded with treatment of some sort. Even though Mr. Jones disputes the efficacy of that treatment, he does not allege facts establishing deliberate indifference. Where medical treatment has been provided, and there has been no intentional delay or interference with an inmate's care, mere failure to provide additional care beyond what is medically required will neither constitute "an unnecessary and wanton infliction of pain" nor be "repugnant to the conscience of mankind." Estelle, 429 U.S. at 106.

[8]     A simple difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation, but constitutes, at most, a negligence malpractice claim. Estelle, 429 U.S. at 106-07; Ledoux v. Davies, 961 F.2d 1536 (10th Cir. 1992). Likewise, a delay in providing medical care does not violate the Eighth Amendment unless there has been deliberate indifference resulting in substantial harm. Olson v. Stotts, 9 F.3d 1475 (10th Cir. 1993). The judgment of medical personnel which results in the deprivation of medical treatment may give rise to an action in tort for malpractice or negligence, but does not rise to a federal constitutional violation. Estelle, 429 U.S. at 105-06.

Moreover, in order to establish liability in a <u>Bivens</u> action, a plaintiff must allege that each individual defendant directly and personally participated in the purported deprivation of plaintiff's federal constitutional rights. <u>Rizzo v. Goode</u>, 423 U.S. 362, 373-77 (1976). Some defendants named herein are not alleged to have been directly involved in the unconstitutional medical care decisions or omissions of which plaintiff complains - namely Mr. Swan, Mr. Drenen, Mr. Gallegos, Dr. MacMillan[9], and OPMC. The supervisory capacity of a particular defendant is not a sufficient basis for establishing liability under <u>Bivens</u>.

Plaintiff also fails to specify which defendant personally knew of but refused to follow his physician's instructions on proper post-surgery care, which ignored requests, and which knew of and were directly responsible for failing to repair the hole in the basketball court. He must have named the defendant that personally participated in each of these alleged acts in order to hold him or her liable for money damages under <u>Bivens</u>.


**STATUTE OF LIMITATIONS BAR**

Even if Mr. Jones' allegations of Eighth Amendment violations could be liberally construed as <u>Bivens</u> claims against individual defendants, and were supported by sufficient facts

---

[9]     As noted in Mr. Jones' prior action, he has alleged no wrongful acts by either Dr. MacMillan personally, or attributable to or occurring at the OPMC where plaintiff's surgery was performed. Plaintiff does not allege that either of these defendants denied any of his requests for medical treatment, mis-diagnosed his injury, delayed proper treatment, or improperly treated his injury.

showing deliberate indifference and direct participation on the part of each defendant, it appears from the face of the complaint that the applicable two-year statute of limitations for bringing an action against the individual federal actors has expired.   See K.S.A. § 60-513(a)(4); Johnson v. Johnson County Com'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991)(applying § 60-513(a)(4) in a 1983 action).   Plaintiff's injury, his requests for diagnosis and treatment; the alleged initial mis-diagnosis and delay of adequate, immediate treatment; and the failure to adhere to post-surgery instructions occurred in May and June of 2005[10].   Plaintiff filed the instant complaint more than two years later on August 24, 2007.

## FTCA CLAIM AGAINST UNITED STATES

On the other hand, plaintiff's FTCA claims against the United States appears to be timely.   Plaintiff's exhibits demonstrate he filed a timely administrative claim with the federal agency, and filed this complaint within six months of the final denial of that administrative claim.

Plaintiff's complaint alleges two viable FTCA claims against the United States: (1) negligence based on failure to

---

[10]As a general rule, a cause of action "accrues" and the statute of limitations begins to run when a plaintiff knows, or has reason to know through the exercise of reasonable diligence, of the injury that provides the basis for his claim.  A plaintiff need not know the full extent of his injuries before his claim accrues, but merely of the existence and cause of his injury.  See United States v. Kubrick, 444 U.S. 111, 120 (1979).

repair the pot hole on the basketball court[11], and (2) negligence based on the failure of medical staff and other prison employees to properly treat Mr. Jones' ankle injury both before and after surgery. Plaintiff properly asserts jurisdiction for claims of negligence and malpractice under 28 U.S.C. § 1346(b)(1)[12], the jurisdictional statute for the FTCA.

**IT IS THEREFORE ORDERED** that plaintiff is given thirty (30) days in which to either submit the filing fee of $350.00 or a proper motion for leave to proceed without prepayment of fees; and to show cause why this action should not be dismissed as against all defendants except the United States, and proceed only upon his claims under the FTCA.

The Clerk is directed to transmit to plaintiff forms for filing a motion for leave to proceed without prepayment of fees.

**IT IS SO ORDERED.**

Dated this 18th day of October, 2007, at Topeka, Kansas.

---

[11]    Plaintiff's second complaint differs from his first, in that he has added the allegations that the United States and the BOP were negligent and indifferent to his safety in ignoring and failing to repair the "large fissure" in the basketball court at the USPL, and that he suffered serious physical injury due to this gross negligence of the United States by and through its agent, the FBOP. Plaintiff does not provide a copy of the administrative claim submitted by him to the BOP. At this juncture, the court assumes he raised his additional claim of negligence in failing to repair. If he did not, that particular claim will be subject to dismissal for failure to exhaust administrative remedies, since it is different from his complaints regarding medical attention for his injury.

[12]    Section 1346(b)(1) pertinently provides: ". . . [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the Untied States, for money damages, . . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, where the United States, if a private person, would be liable to claimant in accordance with the law of the place where the act or omission occurred."

s/Sam A. Crow
U. S. Senior District Judge